UNITED GRATIOT FURNITURE MART, INC v MICHIGAN BASIC
PROPERTY INSURANCE ASSOCIATION

Docket No. 86023. Submitted December 3, 1986, at Detroit. Decided
April 7, 1987.

United Gratiot Furniture Mart, Inc., brought an action in Wayne
Circuit Court seeking insurance benefits under a commercial
fire insurance policy issued by Michigan Basic Property Insur-
ance Association. A fire destroyed plaintiff's place of business
and plaintiff sought benefits for its lost inventory. Defendant
denied the claim of loss on the basis that plaintiff's president
and largest shareholder, Samuel Goldberg, either set or pro-
cured the setting of the fire that destroyed the insured inven-
tory. The proofs at trial established that Goldberg owned forty-
four percent of the stock of the corporation, with his wife
owning twenty-four percent of the stock, each of his two daugh-
ters owning twelve percent and the corporation's attorney
owning eight percent of the stock. The proofs further indicated
that the fire had been deliberately set, that the corporation's
income had dropped precipitously in the months prior to the
fire, that an elaborate alarm system had been turned on prior
to the fire, that there were no signs of forced entry and that
only Goldberg and one employee had access to the alarm
system. The trial court, Sharon Tevis Finch, J., charged the
jury that it could ignore the corporate existence and find
defendant not liable if it found that the fire was a result of
arson and that the arsonist "controlled the management and
the operation of the corporation." The jury returned a verdict
of no cause of action. Plaintiff appealed.

The Court of Appeals *held:*

1. An insurance company may assert the defense of arson

REFERENCES ·

Am Jur 2d, Appeal and Error § 813.

Am Jur 2d, Arson and Related Offenses §§ 5-13, 46-48, 53, 54.

Am Jur 2d, Insurance §§ 493, 494.

Fire insurance on corporate property as affected by its intentional
destruction by a corporate officer, employee or stockholder. 37
ALR3d 1385.

See also the annotations in the Index to Annotations under Arson;
Fire Insurance.

with respect to a claim of loss by a corporation on a fire insurance policy if it is factually demonstrated that the individual who set the fire or procured the setting of the fire exercised complete dominance and control over the affairs of the corporation.

2. To the extent that the trial court's instructions on control of the corporation were not sufficiently specific, reversal is not mandated since, on the proofs presented at trial, no reasonable jury could have concluded that Samuel Goldberg did not exclusively control plaintiff corporation.

3. The evidence adduced at trial was sufficient to support a conclusion by the jury that the fire was the result of arson and that Samuel Goldberg set or procured the setting of the fire.

Affirmed.

1. INSURANCE — FIRE INSURANCE — ARSON — CORPORATIONS — DEFENSES.

An insurance carrier may assert arson as a defense against a corporation's claim of fire loss if it is factually demonstrated that the individual who set or procured the setting of the fire exercised complete dominance and control over the affairs of the corporation.

2. APPEAL — JURY INSTRUCTION.

The Court of Appeals will reverse on the basis of erroneous or inadequate jury instructions only where failure to reverse would be inconsistent with substantial justice.

3. ARSON — CIRCUMSTANTIAL EVIDENCE — MOTIVE — OPPORTUNITY.

The elements of arson may be established by circumstantial evidence where there is evidence of motive and opportunity and independent evidence of the incendiary origins of the fire.

*Alvin C. Sallen,* for plaintiff.

*Denenberg, Tuffley, Bogan, Jamieson, Black, Hopkins & Ewald, P.C. (by Charles R. Tuffley* and *Donna M. Skelcy),* for defendant.

Before: DANHOF, C.J., and SHEPHERD and W. A. PORTER,* JJ.

DANHOF, C.J. On February 12, 1980, a fire de-

* Circuit judge, sitting on the Court of Appeals by assignment.

stroyed the place of business of plaintiff, United Gratiot Furniture Mart, Inc. Defendant, Michigan Basic Property Insurance Association, insured plaintiff's inventory under a commercial fire policy but refused to pay plaintiff's claim of loss. Defendant contended that plaintiff's president and largest shareholder, Samuel Goldberg, either set or procured the setting of the fire. Plaintiff filed the instant action to collect the face amount of the inventory fire policy. The jury entered a verdict of no cause of action, finding that defendant had shown by a preponderance of the evidence that Goldberg was involved in starting the fire and that Goldberg's control in the corporation was so extensive that his actions should be imputed to the corporation and the corporation's claim of coverage should be denied.

Plaintiff first argues that defendant's defense was insufficient as a matter of law to permit defendant to deny coverage. This argument was raised in the context of a motion for directed verdict at the close of proofs. Plaintiff argues that the corporation was the insured, not Goldberg, and that denying coverage to the corporation unfairly penalizes the other shareholders, who owned fifty-six percent of the corporation's stock[1] and who were not alleged to have participated in the setting of the fire.

As support for its position, plaintiff relies on *Danish Inn, Inc v Drake Ins Co of New York,* 126 Mich App 349; 337 NW2d 63 (1983). However, *Danish Inn* does not address the issue now before us. In *Danish Inn,* the trial court granted summary judgment in favor of the defendant insurer, finding that the sole fact that the plaintiff corpora-

---

[1] Samuel Goldberg's wife owns twenty-four percent of the corporate stock, two daughters each own twelve percent and the corporation's attorney owns eight percent.

tion's principal shareholder and president had pled guilty to an arson-related misdemeanor charge was insufficient to enable the insurer to deny payment to the corporation. The main issue in *Danish Inn* was whether evidence of the guilty plea was admissible. The Court found that it was not admissible and, in so doing, criticized the decision of another panel of this Court in *Imperial Kosher Catering, Inc v Traveler's Indemnity Co*, 73 Mich App 543; 252 NW2d 509 (1977), as not being "sound law." The *Imperial Catering* panel had concluded that evidence of the arson convictions of the officers and sole shareholders of a corporation was admissible and provided a sufficient basis upon which to grant accelerated judgment. In the instant case, there is no issue concerning the admissibility of a criminal conviction as substantive evidence in a civil case arising out of the same occurrence which produced the conviction. In the instant case, the fact that Samuel Goldberg participated in the arson was demonstrated by evidence introduced at trial. *Danish Inn* cannot be read as addressing any of the issues now being raised. Moreover, *Danish Inn* expressly recognized that the actions of a corporation's officer and principal shareholder could be imputed to the corporation in circumstances where there is a finding that the corporate entity should be disregarded. 126 Mich App 351. By its verdict, the jury made such a finding in the instant case.

The instant case presents an issue of first impression for the appellate courts of this state, i.e.: In what situations should an insurance company be allowed to deny payment to a corporation for a fire loss when evidence demonstrates that a shareholder wilfully set the fire?

Plaintiff argues that the corporate form should be disregarded only when the arsonist is the sole

shareholder. In situations where the arsonist is not the sole shareholder, plaintiff argues that insurers should be required to pay the corporation's claim. An insurer may then, as a subrogee of the corporation, bring an action against the arsonist to recover the amount it had been required to pay to satisfy the corporation's claim. Plaintiff contends that such a procedure would provide insurers adequate protection without injuring innocent shareholders.[2]

Defendant contends that insurers should be allowed to refuse payment in all situations in which the stockholder who commits the arson exercised "complete dominance and control" over the corporation—regardless of that stockholder's percentage share of ownership in the corporation. The trial court agreed with defendant and instructed the jury accordingly.

The general rule is set forth in 43 Am Jur 2d, Insurance, § 494, p 565:

> As a general rule, the wilful burning of property by a stockholder of a corporation is not a defense against the collection of insurance by the corporation; nor can a corporation be prevented from collecting the insurance because its agents wilfully set fire to the property without the participation or authority of the corporation or of all the stockholders of the corporation. On the other hand, if there is a conspiracy among the stockholders of a

---

[2] Plaintiff argues that this procedure is required by *Danish Inn, supra*. We have already indicated that *Danish Inn* is not on point. Moreover, even within its own context, *Danish Inn* does not mandate that such is the exclusive remedy available to insurers in situations where a stockholder who does not have sole ownership of the corporation wilfully burns corporate property. The *Danish Inn* panel stated that an insurer "could" bring such an action against the stockholder as the corporation's subrogee. The Court *also* stated that the an insurer could rely on its defenses under the contract to deny payment to the corporation. 126 Mich App 352. Since we conclude *infra* that the corporation's veil was properly pierced, defendant in the instant case *is* relying on a defense under the contract.

corporation to burn the property of the corpora-
tion, and the property is burned in pursuance of
the conspiracy, such act is chargeable to the corpo-
ration and is a good defense to an action on a fire
insurance policy. *Likewise, under the principle of
law that no one should be allowed to profit by his
own wrong, an insured corporation will not be
allowed a recovery on fire insurance policies where
the incendiarist* owns all or practically all of the
stock in the insured corporation, or *is in exclusive
management of the corporate property.* [Emphasis
added.]

The subject has been extensively annotated. See
Anno: *Fire insurance on corporate property as
affected by intentional destruction by a corporate
officer, employee, or stockholder,* 37 ALR3d 1385.

In almost every case which has addressed the
issue now before us, it appears that the point on
which the decision turns is the degree of control
which the incendiarist has exerted over the affairs
of the corporation. If the individual who set or
procured the setting of the fire dominates the
corporation to such an extent that he has exclu-
sive control over the corporation, the corporation
is precluded from recovering benefits under its fire
insurance policy. See, for example, *D I Felsenthal
Co v Northern Assurance Co, Ltd,* 284 Ill 343; 120
NE 268 (1918); *Northern Assurance Co v Rachlin
Clothes Shop, Inc,* 32 Del 406; 125 A 184 (1924);
*Kimball Ice Co v Hartford Fire Ins Co,* 18 F2d 563
(CA 4, 1927); *Miller & Dobrin Furniture Co, Inc v
Camden Fire Ins Co Ass'n,* 55 NJ Super 205; 150
A2d 276 (1959); *Vicksburg Furniture Mfg, Ltd v
Aetna Casualty & Surety Co,* 625 F2d 1167 (CA 5,
1980); *Continental Ins Co v Gustav's Stable Club,
Inc,* 211 Neb 1; 317 NW2d 734 (1982).

This rule is applied even when the arsonist is
not a majority stockholder. *Kimball Ice, supra* (the

arsonist owned twenty-five percent of the corporation's stock); *Northern Assurance Co, supra* (the arsonist was not "the largest cash investor"), *Continental Ins Co, supra,* (the arsonist owned fifty percent of the stock and his ex-wife owned the other fifty percent); *Vicksburg Furniture, supra* (the arsonist owned twenty-five percent).

However, in instances where it is not shown that the arsonists had exclusive control over the corporation, insurers are not permitted to deny coverage. See, e.g., *Erlin-Lawler Enterprises, Inc v Fire Ins Exchange,* 267 Cal App 2d 381; 73 Cal Rptr 182 (1968); *Fidelity-Phenix Fire Ins Co of New York v Queen City Bus & Transfer Co,* 3 F2d 784 (CA 4, 1925).

The cases have expressed various rationales for their holdings. In *D I Felsenthal, supra,* the Supreme Court of Illinois relied on "[e]very principle of insurance law and sound reasoning" to conclude that a corporation should not be allowed to recover on a policy for the destruction of corporate property when the fire was set by an individual who was the beneficial owner of "practically all of the stock in the corporation and who had absolute management and control of its affairs and its property." 284 Ill 348-349. In *Northern Assurance Co,* the Supreme Court of Delaware found that the acts of a person with exclusive control which were done for the purpose of benefiting the corporation were to be regarded as acts of the corporation itself. 32 Del 415-421. In *Kimball Ice, supra,* the court found insurance fraud would be encouraged if the corporation could simply turn control over to a single person, who could effect the wilful burning of the insured's premises, and then assert a claim of innocence on the part of the other shareholders. 18 F2d 567. In *Miller & Dobrin Furniture Co,* the court based its decision on the

equitable principles that the corporate form should not be used as a shield to perpetrate injustice and that no one should be allowed to benefit by his own wrongdoing. 55 NJ Super 218-219.

We find the above-cited authorities persuasive. We hold that an insurance carrier may assert arson as a defense against a corporation's claim of fire loss if it is factually demonstrated that the individual who set or procured the setting of the fire exercised complete dominance and control over the affairs of the corporation.

We reject plaintiff's contention that it would be more equitable to require defendant to pay the claim and then bring an action against Goldberg as plaintiff's subrogee. Our rejection is based on two grounds. First, there would be no guarantee that the insurer would in fact be able to recover from the arsonist the amount it had paid on the policy. The insurer would be able to recover only to the extent of the arsonist's personal assets. Second, we are not convinced that such a rule would benefit the other shareholders. The rule which we have adopted applies only in situations where the incendiarist has pervasive control over the corporation. Thus, the incendiarist would control the disposition of the insurance proceeds which the corporation would receive. In all probability, he or she would keep the proceeds within the corporation. In that event, the shareholders who were not involved would not see any of the insurance funds even if the corporation were paid. By using the corporate cloak in this manner, the arsonist could retain and personally enjoy the benefits of the proceeds contrary to the equitable principles upon which our decision is based. Plaintiff's suggested remedy is subject to too great a potential for abuse.

To the extent the rule we have adopted might in

some situations adversely affect shareholders who did not participate in the arson, the seeming unfairness of such a rule is addressed in *Northern Assurance Co, supra:*

> Those in a corporation who have charge of its control are supposed to manage its assets in the way they regard as most advantageous to its welfare. If instead for instance of selling the personal property for profit, those who do the thinking and planning for the corporation think it best to burn it up and collect much more than its value from an insurance company, in our judgment all that need be said about the matter is that such is the manner in which the responsible management deems it best to handle the corporate affairs. [32 Del 421.]

In other words, the value of a noncontrolling interest in a corporation is always largely dependent on the judgments and choices which the controlling faction makes. When those in control make bad decisions, the corporation suffers loss. As a natural consequence, such loss falls upon all shareholders.

We find that the trial court properly adopted the "dominance and control" standard. Thus, the trial court properly denied plaintiff's motion for directed verdict.

In preparation of the possibility that we might reject its first argument, plaintiff next argues that the trial court improperly instructed the jury to ignore the corporate existence if it found that the alleged arsonist "controlled the management and the operation of the corporation." Defendant argues that this instruction failed to provide the jury with specific standards as to what constituted "control" and was so vague that it deprived plaintiff of a fair trial.

Plaintiff presented the same argument to the trial court after the jury had reached its verdict. In its opinion and order the trial court stated:

> The instructions as to this test of "dominance and control" were scanty, and if there were a true fact question on this issue a new trial would obviously have to be granted. However, the proofs on Mr. Goldberg's absolute control of the Plaintiff corporation were ample, and the Court finds as a matter of law that a reasonable jury could not find that he did not exercise complete control and domination over the affairs of the corporation. Since no other finding could be reached on the control issue, no harm has been done by the failure to expand upon this test in the instructions.

While we agree that the instruction could have been more specific, we do not believe reversal is required. If a jury charge is erroneous or inadequate, reversal is required only where failure to reverse would be inconsistent with substantial justice. *Willoughby v Lerhbass,* 150 Mich App 319, 336; 388 NW2d 688 (1986); *Johnson v Corbet,* 423 Mich 304; 377 NW2d 713 (1985); MCR 2.613(A). We have reviewed the record and agree with the trial court that no reasonable jury could have concluded that Samuel Goldberg did not exclusively control plaintiff-corporation. Goldberg in fact testified that none of the other shareholders played an active part in the management of the business. No testimony was introduced to show any instance where anyone had exerted control or made a business decision that was not subject to Goldberg's approval. Nor has plaintiff argued on appeal that Goldberg did not in fact control plaintiff corporation. Under these circumstances, plaintiff was not prejudiced by the broadness of the instruction given to the jury.

Finally, plaintiff argues that there was insufficient evidence presented at trial to support the jury's finding that Goldberg set or procured the setting of the fire.

In *George v Travelers Indemnity Co,* 81 Mich App 106, 112; 265 NW2d 59 (1978), lv den 405 Mich 844 (1979), this Court stated:

> Where an arson defense is raised by an insurer, the burden is on the insurer to prove by a preponderance of the evidence that the plaintiff set fire to the building or caused it to be set on fire. *Walz v Peninsular Fire Insurance Co,* 221 Mich 326, 343; 191 NW 230 (1922). The elements of arson may be established by circumstantial evidence. *People v Porter,* 269 Mich 284, 292; 257 NW 705 (1934), *Peterson v Oceana Circuit Judge,* 243 Mich 215, 217; 219 NW 934 (1928). Where there is independent evidence of the incendiary origins of a fire, Michigan courts have affirmed arson convictions based on circumstantial evidence of motive (such as insurance coupled with business difficulties) plus opportunity (such as access to the building). *People v Dorrikas,* 354 Mich 303, 307-308; 92 NW2d 305 (1958); *People v Bailey,* 42 Mich App 359, 361-363; 202 NW2d 557 (1972); *People v Horowitz,* 37 Mich App 151, 153-158; 194 NW2d 375 (1971), *lv den,* 387 Mich 753 (1972).

See also, *Crossley v Allstate Ins Co,* 139 Mich App 464; 367 NW2d 760 (1984).

In the instant case, both parties agreed that the fire had been deliberately set. Also, defendant presented evidence that plaintiff's interest and sale income had fallen precipitously in the months before the fire. Moreover, there was substantial evidence that the fire had been set by a person with access to the building. The building had an elaborate alarm system which could not be by-

passed when it was in the "On" mode. Goldberg testified that the alarm was on when he locked the door on the night prior to the fire. After the fire, the police found no signs of forcible entry. Only Goldberg and one employee had access to the alarm code. Thus, there was sufficient evidence from which the jury could conclude that the fire had an incendiary origin and that Goldberg had both a substantial motive and opportunity to set the blaze. Therefore, the jury was therefore permitted to conclude, based on this evidence, that Goldberg either set or procured the setting of the fire.

Affirmed.