Gerald FITZGERALD; Thomas G. Fitz-
gerald; Ruth Fitzgerald; Michael Hus-
by; and New Argonaut, Inc., a Michi-
gan corporation, Plaintiffs–Appellees,

v.

GREAT CENTRAL INSURANCE COM-
PANY (86–1372), Aetna Casualty &
Surety Company (86–1387), Defend-
ants–Appellants.

Nos. 86–1372, 86–1387.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1987.

Decided March 18, 1988.

Charles R. Tuffley (argued), Denenberg,
Tuffley, Bocan, Jamieson, Black, Hopkins
and Ewald, P.C., Walter S. Schram, South-
field, Mich., for defendant-appellant in No.
86–1372.

Thomas Rensberry, Robert Kaufman (ar-
gued), Gaylord, Mich., for plaintiffs-appel-
lees in No. 86–1372.

Charles R. Tuffley (argued), Denenberg,
Tuffley, Bocan, Jamieson, Black, Hopkins
& Ewald, P.C., Southfield, Mich., for de-
fendant-appellant in No. 86–1387.

Thomas Rensberry, Gaylord, Mich., for
plaintiffs-appellees in No. 86–1387.

Before JONES and BOGGS, Circuit
Judges, and PECK, Senior Circuit
Judge.

JOHN W. PECK, Senior Circuit
Judge.

This consolidated action involves claims
for fire insurance benefits arising out of a
fire which occurred on November 26, 1980
at "Jerry's Junction," a tavern located in
Houghton Lake, Michigan. Plaintiffs-ap-
pellees in this action are New Argonaut,
Inc. (the corporate entity which owned the
contents of Jerry's Junction); Gerald Fitz-
gerald (president and stockholder of New
Argonaut, general manager of Jerry's
Junction, and owner of one-third interest in
the building housing Jerry's Junction); Mi-
chael Husby (owner of one-third of the
shares of New Argonaut and owner of
one-third interest in the building); and
Thomas Fitzgerald (father of Gerald and
owner of the remaining one-third New Ar-
gonaut shares and land owner of the build-
ing). Defendants-appellants are Aetna
Casualty, insurer of the contents of the
apartment located above Jerry's Junction,
and Great Central Insurance Company, the
insurer of the building, contents and loss of
earnings.

Following the November 26, 1980 fire,
plaintiffs' claim for benefits was denied.
The insurers claimed that Gerald Fitzger-

ald set or procured the setting of the fire. Plaintiffs then filed a complaint against Aetna and Great Central for breach of contract.

Plaintiffs' claims were removed from state to federal court and then consolidated. During a trial to a jury, plaintiffs made a motion for a directed verdict at the close of the evidence on defendants' affirmative defense of arson. The motion was granted. The judge found that there was sufficient evidence to go to the jury on the issue of corporate responsibility and on the issue of incendiarism. The judge, however, ruled that the insurers had not established that "Mr. Fitzgerald, as distinguished from all the other persons in the world, including Husby, was responsible for setting this fire, if in fact it was a set fire." In short, the judge held that the insurance companies did not prove that Gerald Fitzgerald had the *exclusive* opportunity or the *exclusive* motive to set the fire. The court awarded plaintiffs $172,495 in damages, plus costs and interest. Great Central paid Thomas Fitzgerald and Michael Husby for damages to the building. Payment was not made on the individual claims of Gerald Fitzgerald or the claim of New Argonaut because of the continuing controversy regarding Gerald Fitzgerald's involvement in the fire.

On the night of the fire, Gerald Fitzgerald, his son and the family dog, who lived in the apartment above the tavern, were all absent from the building. Gerald Fitzgerald spent the night at the Coho Club in Traverse City and left his son and dog with a friend. Michael Husby, who also lived in Fitzgerald's apartment and had recently bought into the corporation, visited the bar during the evening but spent the rest of the night at his girl friend's house. The bar closed at 10:30 that night. Nothing unusual was noted in or around the building until flames and smoke were spotted at 1:30 a.m. The doors to the bar were locked but the separate entrance to the upstairs apartment was unlocked. There was no sign of breaking and entering.

At trial, defendants presented evidence that Gerald Fitzgerald had a clear motive for setting or procuring the fire. The defendants showed that Fitzgerald, personally, and the corporation had suffered continued and increasingly severe financial problems. Beginning in 1978, Jerry's Junction was operating at a loss. Fitzgerald also had personal losses resulting from gambling and cuts in salary from the corporation. Defendants attempted to prove at trial that, since there was no evidence of breaking and entering the night the fire was set, it could be inferred that someone with keys or a knowledge of the building, such as Gerald Fitzgerald, provided the arsonist with the means of entering the building and starting the fire. The defendants introduced the expert opinion of a Michigan State Police Detective who eliminated all other natural or accidental causes in the area where the fire originated and concluded that the fire was intentionally set. In addition, defendants pointed out that New Argonaut had increased its insurance policy amount several weeks before the fire.

The insurance companies now appeal the trial court's order granting the plaintiffs' motion for a directed verdict.

In order to establish an arson defense under Michigan law, the insurer need only show that the fire was of incendiary origin and that the insured had both motive and opportunity to set it. *See George v. Traveler's Indemnity Co.*, 81 Mich.App. 106, 112, 265 N.W.2d 59, 62 (1978). Each element may be established by circumstantial evidence. *Id.; Crossley v. Allstate Ins. Co.*, 139 Mich.App. 464, 469, 362 N.W. 2d 760, 762 (1984). The issue on appeal is whether Judge Churchill was correct in ruling that the insurer must show that the insured had an *exclusive* motive or opportunity in order to establish the affirmative defense of arson. In the recent Michigan case, *United Gratiot Furniture Mart, Inc. v. Basic Property Ins. Assoc.*, 159 Mich. App. 94, 406 N.W.2d 239 (1987), the element of exclusivity of opportunity was not required. That case involved a situation in which there was substantial evidence that a fire had been set by a person with access to the building through a special alarm code.

Only the insured and an employee of the company had knowledge of the alarm code. The court ruled that the jury was permitted to conclude that the insured had both a substantial motive and an opportunity to set the fire. The court gave no consideration to or found it necessary to distinguish the fact that one employee also had access. *Id.* at 104–05, 406 N.W.2d at 243–44. Similarly, in *George v. Traveler's Indemnity Co., supra,* the court was presented with a situation in which a commercial building was destroyed by arson. At trial there was evidence demonstrating that the owners of the supermarket were suffering from significant financial difficulties. Testimony was also presented, however, that showed that local residents of the neighborhood in which the market was located had caused serious trouble for the owners. The store was picketed, windows were smashed, and threats of burning the building were made. The court held that there was enough circumstantial evidence of motive and opportunity on the part of the owners of the market, as well as evidence of incendiary cause, for the jury to find that the arson defense was established. *Id.,* 81 Mich.App. at 113, 265 N.W.2d at 62.

In examining Michigan case law, we are unable to find any authority for the proposition that either exclusive opportunity or exclusive motive need be established in order to determine that the elements of the arson defense have been established. The Michigan courts consistently indicate that, along with independent evidence of incendiary origin, "insurance together with business difficulties" is a satisfactory example of motive and "access to the building" is a sufficient showing of opportunity. *See, e.g., United Gratiot Furniture Mart,* 159 Mich.App. at 104, 406 N.W.2d at 243–44. We therefore find that the district court erred in requiring the insurers to rule out all other persons who might have had motive and opportunity.

A federal court sitting in a diversity case must apply the directed verdict standard of the state whose substantive law governs the particular cause of action. *Arms v. State Farm Fire & Casualty Co.,* 731 F.2d 1245, 1248 (6th Cir.1984). Under Michigan law, the trial court may grant a directed verdict only if it concludes, after viewing all the evidence in the light most favorable to the non-moving party, that "all reasonable men would agree that there has been an essential failure of proof." *Rhea v. Massey Ferguson, Inc.,* 767 F.2d 266, 269 (6th Cir.1985) (quoting *Snider v. Bob Thibodeau Ford, Inc.,* 42 Mich.App. 708, 712, 202 N.W.2d 727, 730 (1972). Based on this standard, we conclude that the insurers have presented sufficient evidence to warrant sending the issue of the affirmative defense of arson to a jury.

Accordingly, the order of the district court granting a directed verdict for plaintiffs is reversed and the case is remanded for a new trial.