# STATE OF MICHIGAN

# COURT OF APPEALS

DKE, INC.,

Plaintiff-Appellant,

v

SECURA INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
November 6, 2018

No.   333497; 337834
Oakland Circuit Court
LC No.   2005-068745-CK

Before:  O'CONNELL, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals, plaintiff, DKE, Inc. ("DKE") appeals as of right a jury verdict in favor of defendant (Docket No. 333497) and the trial court's entry of a consent judgment (Docket No. 337834) in this first party insurance matter.  Because the trial court violated the law of the case doctrine and did not properly instruct the jury, we reverse and remand for a new trial.

Plaintiff is a corporation that owns a two-story commercial building in Southfield, Michigan.  Plaintiff had a policy of insurance on the property with defendant for fire and casualty loss, among other things.  On October 4, 2004, the property was severely damaged as a result of a fire.  Defendant ultimately denied coverage for the loss, for reasons including that the fire was a result of arson by a person whose actions would exclude the loss from coverage under the policy (Patrick Winter, the son of DKE owner, William Winter).  Thus, on August 25, 2005, plaintiff brought an action against defendant for breach of contract and additionally seeking declaratory relief to compel defendant to honor its insurance contract with plaintiff.  The matter proceeded to a jury trial, at the conclusion of which the jury found:  the fire at plaintiff's building was the result of arson; that Patrick Winter was responsible for the arson; and that Patrick Winter was a person with sufficient control over the affairs of DKE to impute his actions to DKE and thus recovery was precluded under an exclusion in the insurance policy issued by defendant. The trial court entered a judgment of no cause of action in favor of defendant and against plaintiff, and later entered an order of judgment awarding $300,000.00 in sanctions in defendant's favor.  These appeals followed.

On appeal, plaintiff first contends that the trial court failed to follow the law of the case doctrine and therefore abused its discretion in denying plaintiff's motion for JNOV and/or a new trial, and that it further improperly instructed the jury as to the control that must have been

-1-

exercised by Patrick Winter over the affairs of plaintiff in order for defendant's policy exclusion to apply. Specifically, plaintiff asserts that this Court, in a prior opinion issued with respect to this case, *DKE, Inc v Secura Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2008 (Docket No. 278032) (hereafter "*DKE I*"), directed the trial court to answer whether Patrick Winter had exercised "complete" dominion and control over the affairs of DKE in order to impute his actions to plaintiff and the trial court instead improperly instructed the jury and submitted verdict forms indicating that the jury could impute Patrick Winter's actions to DKE if it found that he exercised "sufficient" or "requisite" control. We agree.

We review de novo whether the law of the case doctrine applies in a particular case. *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). We review a trial court's decision whether to grant or deny a motion for a new trial and its decision whether to set aside a verdict for an abuse of discretion. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817 (2014). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. (citation omitted). This Court reviews de novo claims of instructional error. *Hill v Sacka*, 256 Mich App 443, 457; 666 NW2d 282 (2003).

Under the law of the case doctrine, an appellate court's ruling on a particular issue binds both the trial courts and other appellate panels in subsequent appeals of the case where the facts remain materially the same. *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). The law of the case applies to issues decided, either implicitly or explicitly, in the prior appeal. *Id*. And, a lower court "may not take action on remand that is inconsistent with the judgment of the appellate court." *Id*. The trial court must strictly comply with the law of the case, as established by the appellate court, "according to its true intent and meaning." *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008), quoting *People v Blue*, 178 Mich App 537, 539; 444 NW2d 226 (1989). "The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Ashker*, 245 Mich App at 13.

In *DKE I*, we granted defendant interlocutory leave to appeal "to decide whether the trial court erred in holding that defendant's dishonest and criminal acts" exclusion to the fire insurance policy held by plaintiff was void under MCL 500.2833." *Slip op*, at 1. This Court noted plaintiff's argument that because William Winter, the president and sole shareholder of DKE was innocent of any wrongdoing (and former MCL 500.2832 provided coverage for innocent insureds), defendant could not deny coverage. This Court then stated:

> We are persuaded that defendant's policy could validly exclude "criminal acts," i.e., arson, of an authorized representative or any person to whom the property was entrusted, so long as defendant establishes that the representative or person to whom the property was entrusted had complete dominion and control over the affairs of the corporation. MCL 500.2833(1)(c). Accordingly, because the dishonesty/criminal acts provision can be interpreted consistent with the mandates of MCL 500.2833 and former MCL 500.2832, the trial court erred in ruling that the provision was void as a matter of law. [*Id*. at 3.]

We concluded our decision in *DKE I* by stating that the trial court:

-2-

was poised to make such a ruling on the issue of whether Patrick was an authorized representative or an individual to whom the property was entrusted, and should do so in the first instance, we remand to allow the trial court to rule on the issue, which will include a determination of whether Patrick had complete dominion and control over the affairs of the corporation under *United Gratiot* [*Furniture Mart, Inc v Basic Property Ins Assoc*, 159 Mich App 94; 406 NW2d 239 (1987)] *Id*. at 3.

The matter was thereafter returned to the trial court, at which time defendant moved for summary disposition. In its April 21, 2009 opinion and order denying defendant's motion, the trial court referenced *DKE I* and reviewed the evidence before it concerning DKE, Patrick Winter, and William Winter. The trial court concluded:

> Clearly, Patrick Winter was an authorized representative or person to whom DKE's property was entrusted. This has never been disputed. The issue now before the Court is whether there is any genuine issue of material fact as to whether Patrick Winter "had complete dominion and control over the affairs of the corporation." . . . Whether an individual has complete dominion and control over a corporation is an issue of fact. *United Gratiot, supra,* at 101. In this case, for the reasons summarized above, the Court would conclude that it is a disputed issue of fact.

The trial court was free to find that the matter of whether Patrick Winter had complete dominion and control over the affairs of plaintiff was a disputed issue of fact to be resolved by the jury and its April 21, 2009 opinion and order was not inconsistent with this Court's directive in *DKE I*.

After the above opinion and order was issued, the matter was stayed for approximately 4 ½ years. When the stay was lifted and the matter proceeded to trial, the original judge was no longer with the trial court. The successor judge, unfortunately, did not interpret or apply *DKE I* consistent with the opinion of the original trial judge or with this Court's intent and meaning.

When discussing jury instructions during trial, the trial court stated that in *DKE I*, this Court had talked about "sufficient" dominion and control and that is the instruction it intended to give to the jury. The trial court stated that was how it interpreted the *DKE I* opinion. Just prior to instructing the jury, and over plaintiff's objections that the *DKE I* Court clearly stated that the standard of control to be applied was that of *complete* dominion and control, the trial court again incorrectly stated that this Court required only that Patrick Winter have "sufficient" dominion and control over the affairs of plaintiff in order for defendant's policy exclusion to apply. The trial court thereafter instructed the jury as follows:

> Defendant has the burden of proof on the following proposition:
>
> (1) That Patrick Winter, to who the property was entrusted, had dominion and control over the affairs of the corporation DKE Inc., and the property at 21751 W. Nine Mile Road;
>
> ***

The trial court also gave special jury instruction No. 3:

> The Defendant insurance company is not required to pay for this loss if you find that a person in sufficient control of DKE, Inc. committed arson.

> ***

> Exactly how much control constitutes sufficient control is a decision left to your good judgment.

The trial court additionally gave special jury instruction No. 6:

> The fact that an alleged arsonist is not a stockholder of the corporation at the time of the fire does not in and of itself mean that the alleged arsonist was not exercising the requisite amount of dominion and control over the affairs of the corporation to preclude coverage of the claim.

And special jury instruction No. 7:

> If Patrick Winter exercised sufficient control over the corporation DKE's affairs, any action of arson on his part would be imputed to the corporation.

The verdict form used by the trial court similarly contained the question, "On October 4, 2004, was Patrick Winter a person with sufficient control over the affairs of DKE, Inc to impute his actions to DKE, Inc.?"

Defendant argues that because the particular issue posed to this Court in *DKE I* was whether the trial court erred in finding that an exclusionary provision in defendant's policy was void because it was broader than allowed under relevant statutes, that was the *one and only* issue necessarily resolved by this Court, and the only issue that could be subject to the law of the case doctrine. Defendant thus contends that the trial court did not violate the law of the case and that it properly instructed the jury. Defendant is incorrect.

The law of the case doctrine applies to issues decided, either explicitly or *implicitly*, in the prior appeal. *Lopatin*, 462 Mich at 260. And, where the trial court misapprehends the law to be applied, it abuses its discretion. *Augustine v Allstate Ins Co*, 292 Mich App 408, 425; 807 NW2d 77 (2011).

As previously indicated, in *DKE I*, we remanded the matter to trial court to rule on the issue "of whether Patrick was an authorized representative or an individual to whom the property was entrusted" and further directed that this ruling "will include a determination of whether Patrick had complete dominion and control over the affairs of the corporation under *United Gratiot*." *Id*. at 3. This is a very clear directive, setting forth the specific standard of control to be applied in the case. There is no misleading or confusing language in the directive. We provided a clear legal measure of control that the jury must find in order for defendant's burden of proof to be met.

-4-

Significantly, in reaching our conclusion on the identified issue in *DKE I*, we necessarily looked at the language of defendant's insurance policy, specifically that of "authorized representative" and whether the policy's criminal acts exclusion could apply to *any* authorized representative of a corporation under current statutory provisions, or whether, as argued by plaintiff, because the corporation itself and its sole shareholder were innocent parties, the policy provision was too broad to be acceptable under applicable statutory provisions. We looked to whether Michigan law provided limitations or guidance on this issue and found such guidance on this issue in *United Gratiot*. Our decision in *DKE I* explicitly stated that we were persuaded "defendant's policy could validly exclude 'criminal acts,' i.e., arson, of an authorized representative or any person to whom the property was entrusted, so long as defendant establishes that the representative or person to whom the property was entrusted had *complete* dominion and control over the affairs of the corporation. MCL 500.2833(1)(c)" (emphasis added). We followed the above sentence in *DKE I* with: "Accordingly, because the dishonesty/criminal acts provision can be interpreted consistent with the mandates of MCL 500.2833 and former MCL 500.2832, the trial court erred in ruling that the provision was void as a matter of law. (*Id*. at 3). The word "accordingly" means "consequently; so." *Merriam-Webster's Collegiate Dictionary* (11[th] ed.). Thus, we reached our ultimate decision in *DKE I as a consequence* of our determination that defendant's policy could exclude criminal acts so long as defendant established that the authorized person to whom the property was entrusted had complete dominion and control over the affairs of the corporation. This determination concerning complete dominion and control was therefore crucial to our decision on the identified issue for resolution and could not be viewed as dicta.

Defendant also argues that, in *DKE I*, this Court stated different standards of control and never resolved what standard would be applicable "although it suggested sufficient control was the appropriate standard in this matter." Again, defendant is incorrect.

Defendant cites this Court's analysis of *United Gratiot, supra,* and this Court's statement in *DKE I* that, "[t]herefore, *United Gratiot* implies that the minimum requirements of the standard fire insurance policy did not include coverage for an arson committed by a person who had the requisite amount of dominion and control over the affairs of the corporation." *DKE I* at 2. According to defendant, this Court's use of the word "requisite" in this sentence indicates that the *DKE I* Court intended "requisite" as the standard of control to be used. This sentence, however, is preceded by these two sentences: (1) "Noting that the decision turned on the degree of control which the arsonist exerted over the affairs of the corporation, this Court held that 'an insurance carrier may assert arson as a defense against a corporation's claim of fire loss if it is factually demonstrated that the individual who set or procured the setting of the fire exercised complete dominion and control over the affairs of the corporation.' " *Id*. at 2, quoting *United Gratiot, supra* at 101; and (2) "Although the [*United Gratiot*] decision did not discuss any particular policy exclusions, presumably, a standard fire insurance policy was in effect." *DKE I* at 2.

This Court's use of the word "requisite" preceding the word "control", when read in context and in conjunction with the prior two sentences in the *DKE I* opinion, clearly indicates that "requisite" referred back to the specific control set forth in *United Gratiot* — that of "complete dominion and control." Defendant's reading of *DKE I* to suggest that this Court adopted some sort of "requisite" control test is without basis.

Defendant also points out that this Court, in a footnote in *DKE I* stated, "[e]xactly how much control is required is not completely clear, as *K & T Enterprises, Inc*, [*v Zurich Ins Co*, 97 F3d 171, 179 (CA 6, 1996)], held that it was unnecessary to read *United Gratiot* so broadly as requiring the arsonist to have exclusive control over the corporation before an insurer could deny coverage. *K & T* declined to draw a bright-line rule concerning the amount of control sufficient to deny coverage, indicating only that sufficient control was proven in the specific factual scenario before it . . . ." *DKE I* at 3 fn 2. First, *K & T Enterprises, Inc*, is a federal court decision, which is not binding on this or the *DKE I* Court. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004). And, the *DKE I* Court did not state that it found *K & T* to be persuasive. Second, the *DKE I* footnote simply noted that *K & T Enterprises, Inc* found that *United Gratiot*'s "complete" control need not be read as synonymous with "exclusive" control and depends on the circumstances of the case. Third, *K & T Enterprises, Inc* is factually distinguishable from the instant matter.

In *K & T Enterprises, Inc*, 97 F3d at 172-173, the court was faced with a case in which a husband and wife were each a 50% shareholder in a franchise, and the husband deliberately set the franchise building on fire. The issue was whether their insurer should be required to pay for the fire damage to the wife, when the parties remained married. *Id*. at 172. The court analyzed the history of shareholder actions being imputed to a corporation and noted that, traditionally, the shareholder had to have exclusive control for the corporation to be liable. The very specific holding of *K & T Enterprises, Inc* was that:

> In light of the indeterminacy in both the verbal formulation of the holding in *United Gratiot* and in the range of cases cited by *United Gratiot* either directly or indirectly, we hold that the Michigan Supreme Court would sustain Zurich's arson defense in this case as a matter of law. Without certainty that the common law of the states generally employs the exclusive control standard as a necessary condition for an insurance company to properly refuse to pay a corporation on a fire insurance policy when arson by a corporate officer or shareholder has occurred, we see no reason to assume that the Michigan Supreme Court would extend *United Gratiot*, rather than limit it to its core holding. Because we can only decide cases under state law and not make state law, we decline to draw the line indicating to insurance companies exactly how much control a corporate officer and/or shareholder who has committed arson must possess before a refusal to pay a corporation on a fire insurance policy will be upheld. We hold only that this line is crossed when the arsonist, who is the president and sole officer of the corporation, as well as a 50% shareholder, is married to the other 50% shareholder and the couple is neither divorced nor separated and conduct the day-to-day operations of the corporation jointly. [*Id*. at 179.]

Obviously, the *DKE I* Court's statement that the *K & T Enterprises, Inc* court found that "sufficient" control was proven was simply a recognition that the *K & T Enterprises, Inc* court did not find that the arsonist in that case had "exclusive" control over the corporation, but that given the unique situation, where the award of insurance proceeds to the innocent shareholder (the arsonist's wife) would operate to reward the arsonist for his wrongdoing, they would articulate no specific standard regarding control, but would simply find that arsonist had *enough* control to deny the insurance coverage.

In *DKE I*, this Court clearly articulated the standard to be applied as that of *complete* dominion and control and specifically directed on remand that, "we remand to allow the trial court to rule on the issue, which will include a determination of whether Patrick had complete dominion and control over the affairs of the corporation under *United Gratiot*." *DKE I* at 3. The trial court violated the law of the case doctrine by not following this Court's determination and directive that the standard applicable was that of "complete" dominion and control by Patrick Winter and failed to provide the jury with instructions that accurately set forth the correct and specific legal standard of complete dominion and control.

A trial court may give a special jury instruction as long as the instruction accurately states the law and is concise and understandable. *City of Novi v Woodson*, 251 Mich App 614, 630; 651 NW2d 448 (2002), superseded by MCL 213.55 on other grounds. As indicated above, the correct standard to be used was whether Patrick Winter had *complete* dominion and control over the affairs of DKE. The trial court's instruction of "sufficient" control was not in conformity with the direction of this Court on remand and does not accurately state controlling law.

In *United Gratiot*, 159 Mich App 94, a fire destroyed the United Gratiot building and United Gratiot's insurer, Michigan Basic Property Insurance, refused to pay under the commercial fire insurance policy it had issued on the building because it determined that Samuel Goldberg, United Gratiot's president and largest shareholder, set the fire or directed someone else to set it. *Id*. at 96. United Gratiot sued its insurer and a jury entered a verdict of no cause, finding that the insurer had shown that Goldberg had been involved in setting the fire and that "Goldberg's control in the corporation was so extensive that his actions should be imputed to the corporation and the corporation's claim of coverage should be denied." *Id*.

On appeal, United Gratiot argued that the corporation was the insured, not Goldberg, and that denying coverage to the corporation unfairly penalized the other shareholders, who owned fifty-six percent of the corporation's stock, and who had nothing to do with the fire. *Id*. The *United Gratiot* Court stated that it was faced with this issue of first impression: "In what situations should an insurance company be allowed to deny payment to a corporation for a fire loss when evidence demonstrates that a shareholder willfully set the fire?" *Id*. at 97. This Court indicated that the decision turns on the "degree of control which the incendiarist has exerted over the affairs of the corporation." This Court ultimately held that "an insurance carrier may assert arson as a defense against a corporation's claim of fire loss if it is factually demonstrated that the individual who set or procured the setting of the fire exercised complete dominance and control over the affairs of the corporation." *Id*. at 101. Thus, under *United Gratiot*, the standard of control is that of "complete" dominance and control — not "sufficient" control as the trial court instructed the jury in this case.

There is a distinct and significant difference between "sufficient" and "complete." "Sufficient" is defined as "being as much as needed." *The American Heritage Dictionary of the English Language* (4th ed.). "Complete" means "absolute; total." *Id*. The trial court, then, instructed the jury on that it could relieve defendant of liability if it found that Patrick Winter exercised an arguably lesser level of control over plaintiff than that of "complete." Whether this Court believes it is factually clear that Patrick Winter controlled every aspect of the corporation and thus had complete dominion and control over the same (as the dissent states that it is) is irrelevant. This Court's job is not to make factual determinations for the jury or to decide on its

own whether the evidence presented met the appropriate standard of control, as we are not presented with an issue of whether the jury's verdict was against the great weight of the evidence. Our scope of review is much more limited in this case.

Notably, when deciding defendant's motions for directed verdict on certain issues during trial, the trial court stated that the issue of dominion and control needed to be presented to the jury and further stated that "I do think it's an issue for the jury to determine whether or not Patrick Winter was an authorized agent of D.K.E. at the time." Thus, the trial court, which had the opportunity to observe witnesses as well as listen to all of the testimony, did not find, as the dissent does, that "[n]ot one scintilla of evidence introduced at trial establishes that anyone else exercised any dominion or control over plaintiff-corporation." Moreover, the trial court clearly recognized that it was not to act as a thirteenth juror and weigh the evidence of its own accord. See, e.g., *People v Lemmon*, 456 Mich 625, 645; 576 NW2d 129, 138 (1998). We, too, do not weigh the evidence in addition to or in the place of the jury.

This entire case hinged upon whether Patrick Winter was an authorized representative of DKE and whether he exercised complete dominion and control over DKE such that defendant's policy exclusion could apply and the jury instructions went to the crux of the entire case. Without being instructed on the correct legal standard (that it must find that Patrick Winter exercised *complete* dominion and control), the jury in this matter was not in a position to properly decide the case and this Court cannot determine if the jury would have reached the same conclusion had it been properly instructed with the correct legal measure. Because the special jury instructions in this case do not accurately state the law and go directly to defendant's burden of proof, and because the trial court violated the law of the case doctrine, a new trial is required.

Plaintiff next asserts that it is entitled to a new trial because it was precluded from deposing and calling former Eastpointe Fire Marshall Jeffrey Wallace as a witness. While preliminary questions of law are reviewed de novo, a trial court's decision to admit or exclude evidence is generally reviewed for an abuse of discretion. *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002). Plaintiff is entitled to a new trial, as indicated above; however, the trial court did not err in precluding the deposition or testimony of Wallace.

Former Eastpointe Fire Marshall Jeffrey Wallace and his dog were involved in the investigation of the 2004 fire at plaintiff's building. In 2007, Wallace was charged with several counts of tampering with evidence, making a false police report, and obstruction of justice. Specifically, Wallace was accused of deliberately planting accelerants at several fire scenes then "finding" his planted accelerants with his dog. Wallace ended up pleading guilty to several charges in different counties. At a hearing on counter-motions by the parties, the trial court determined that no testimony whatsoever concerning Wallace would be admitted at trial.

Plaintiff initially sought to call Wallace as a witness for the purpose of admitting evidence of Wallace's subsequent convictions for planting evidence of arson at other fire investigation scenes. However, evidence used exclusively for impeachment purposes is not substantively admissible in a party's case-in-chief without some other independent basis for admitting that evidence. *Barnett v Hidalgo*, 478 Mich 151, 164; 732 NW2d 472 (2007). Evidence of a witness's criminal acts or convictions is not admissible to prove that person acted in conformity with a criminal character. MRE 404(b)(1). And, Wallace's crimes could not be

used to challenge the credibility of the *other* expert witnesses who investigated the fire and concluded that it was caused by arson and could not be used as substantive evidence that the evidence of arson was planted by Wallace and that no arson occurred in this case.

If plaintiff sought to call Wallace as a witness to obtain his testimony about what his dog "hit" on at the fire scene, that testimony would be irrelevant and/or more prejudicial then probative. MRE 401 defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

Witnesses Jim Dundas, the Southfield Fire Marshall, and Daniel Tomaszewski, a fire inspector for the Southfield Fire Department, testified that they smelled accelerants in at least two specific places in the building while they were investigating the fire. Tomaszewski further testified that he took evidence from the scene based on his smell of those areas and sent them to the Michigan State Police lab for testing. Witness Erin Cohe of the Michigan State Police forensic lab testified that she received seven items for accelerant testing from the Southfield fire department and she could smell accelerants on four of the seven items. Cohe testified that she tested all of the items for accelerants and all items came back positive for accelerants. Thus independent witnesses could testify about the presence of accelerants at the fire scene.

Clearly, plaintiff's ultimate goal was to imply to the jury that Wallace planted accelerants at the scene in this case and to do so through his later convictions, which is not allowable under MRE 404(b)(1). And, admission of Wallace's convictions for crimes that occurred several years after the fire at issue would necessarily confuse the jury and cause it to speculate, without evidence, on whether the accelerants found in this matter were attributable to Wallace.

Given our finding that plaintiff is entitled to a new trial, we need not considered the issue raised in Docket No. 337834 on appeal.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto